**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 21-cr-495 (ABJ)** |
| **v.** | : | |
| | : | |
| **DANIEL GRAY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS COUNT NINE OF THE FIRST SUPERSEDING INDICTMENT**

---

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this response to Defendant Daniel Gray's Motion to Dismiss Count Nine of the Superseding Indictment, Dkt. No. 56, and respectfully requests that this Court deny Defendant Gray's motion.

## I. FACTUAL BACKGROUND

### A. General Facts

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress convened in the United States Capitol building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. As early as 12:50 p.m., certain individuals in the crowd forced their way through, up, and over erected barricades. The crowd, having breached police officer lines, advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol. At approximately 2:20 p.m., members of the United States House of

Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

**B.      Facts Specific to Defendant Gray**

*Prior to January 6, 2021*

Prior to January 6, 2021, Gray posted several statements on a social media platform and wrote several private messages to friends utilizing social media. His posts expressed excitement about traveling to Washington, D.C. to take part in demonstrations on January 6. For example, Gray wrote "Militia finna be lit y'all!!!," [*sic*] and, "Sh[*]ts about to get lit y'all. I'm actually really excited at the possibility of the insurrection act being implemented," [*sic*] in the days leading up to January 6.

*On January 6, 2021*

Gray entered the restricted grounds of the U.S. Capitol complex the afternoon of January 6, 2021. While on restricted grounds he and others confronted police protecting the U.S. Capitol Building. Thereafter, Gray entered the Capitol Building, remaining inside for approximately 33 minutes. While inside, Gray and other rioters confronted a line of uniformed law enforcement officers in the Rotunda. Gray and others yelled at and shoved officers. While the group of rioters that included Gray was pushing the police officers, one officer fell down a set of stairs just off the Rotunda. Eventually, law enforcement officers were able to get Defendant Gray out of the U.S. Capitol Building.

*After January 6, 2021*

On January 7, 2021, Defendant Gray returned to the U.S. Capitol grounds where he was detained by Metropolitan Police Department officers for several minutes before being released.

Gray stated that he returned to look for his cellphone, which he believed had been stolen the previous day.[1]

Later that day, Gray traveled to a nearby airport in order to leave the area. While there, he recorded a "selfie-style" video which he streamed to his Instagram account. Gray admitted to being present at the U.S. Capitol on January 6, 2021 and described some of his conduct. Among other statements, Gray said words to the effect of, "a female cop stole my phone and I got mace'd . . . and I'm like you know what, we're doing this and so we literally pushed them from the front steps of the Capitol all the way back." He also stated he encountered the female police officer later that day, and that she started crying, took off her vest, and ran down the stairs. Gray also stated that he had gone into House Speaker Pelosi's Office. His overall demeanor was one of enthusiasm and pride for what he had done on January 6, 2021.

Defendant Gray continued to message social-media friends about his involvement in events of January 6. For example, Gray wrote, "Dude we literally took congress over. I don't wanna say too much more lol was the rowdiest thing I've ever done and you know me lol," [*sic*]. On or about January 11, 2021, Gray expressed a desire to engage in further violence, messaging another user: "If Biden is sworn in Im coming back to fight. But I truly dont believe he will be sworn in," [*sic*].

## II.  **PROCEDURAL HISTORY**

On December 1, 2021, a grand jury returned a nine-count superseding indictment charging Gray with: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Obstruction of an Official Proceeding, and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Two); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1)

---

[1] After January 6, 2021, Defendant Gray learned that someone had found his phone at the Capitol and wanted to return it.

(Count Three); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) (Count Six); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Seven); Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Nine). Dkt. No. 25.

Gray was arraigned on December 6, 2021. A trial is scheduled to commence on January 18, 2023.

On October 21, 2022, Gray filed a "Motion to Dismiss Count 9 of the First Superseding Indictment." Dkt. No. 56. The government files this response.

### III.  LEGAL STANDARD

**A.     The Failure to State an Offense Challenge**

A defendant may move before trial to dismiss an indictment, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging document, such as an indictment, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148–149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). A charging document is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be

accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And a charging document need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

When assessing the sufficiency of criminal charges before trial, an indictment "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether the allegations "if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

Judge Bates, in a recent memorandum opinion, recognized that there are two ways in which an information may fail to state an offense. First, "if the charged statutory provision is unconstitutional," and second, "if the offense charged does not apply to the defendant's conduct." *United States v. Nassif*, 21-CR-421, Dkt. No. 42 at 3 (Sept. 12, 2022) (Bates, J.) (citations omitted).

## B.     The Facial and As-Applied Constitutional Challenge

In the First Amendment context, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 450 (2008). "To succeed in a typical facial attack, [a defendant] would have to establish that no set of circumstances exists under which [a statute] would be valid [ . . . ] or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up). The Supreme Court recognizes a second type of facial challenge when dealing with First Amendment issues, "whereby a law may be

invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (cleaned up). To rule a statute as facially unconstitutional is "strong medicine" that should only be employed "with hesitation, and then only as a last resort*." L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (cleaned up). In a so-called "as-applied" challenge, the defendant would necessarily show that even if there are no constitutional issues with the statute as-written, it could still "be applied in such a manner as to stifle free expression." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002).

**C.     The Forum Based Approach to Restrictions on Government Property**

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id.* By contrast, a nonpublic forum is "a space that is not by tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All., 138 S. Ct. at*

6

*1886*; and—notably for this analysis—the inside of the United States Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.).

**D.      Background Regarding Section 5104**

Congress passed the predecessor statute to Section 5104, which prohibits certain "unlawful activities" in Capitol Buildings, or on Capitol Grounds, or both, in 1946. *See* Act of July 31, 1946, 60 Stat. 719, 720 (then codified at 40 U.S.C. § 193); *see Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000). One provision in the 1946 legislation made it a crime to "parade, stand, or move in processions or assemblages" or to display "any flag, banner or device designed or adapted to bring into public notice any party, organization, or movement" on Capitol Grounds. *See* 40 U.S.C. § 193g (1964).

In 1967, Congress enacted the provision at issue here, which makes it a crime "willfully and knowingly [to] parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G) (originally enacted as 40 U.S.C. § 193f(b)(7)). The 1967 legislation thus "ma[de] clear that the 1946 act relates not only to the Capitol Grounds but also to acts committed within the Capitol Building itself as well as other buildings located on the Capitol Grounds." 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Anderson). In 1972, a three-judge panel of this Court struck down the prohibition in Section 193g (parading on Capitol Grounds), reasoning that although the government had a substantial interest in protecting the Capitol Grounds, that interest was not sufficient to "override the fundamental right to petition 'in its classic form' and to justify a blanket prohibition of all assemblies, no matter how peaceful and orderly, anywhere on Capitol Grounds." *Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 585 (D.D.C. 1972). In reaching that conclusion, the three-judge panel identified "existing laws

regulating conduct" in the Capitol that its decision did not affect, including the prohibition at issue here. *Id.* at 587–88.

## IV. <u>ARGUMENT</u>

Gray's motion to dismiss Count Nine is without merit and should be denied. Gray advances three arguments: (1) Count Nine fails to state an offense; (2) Section 5104(e)(2)(G) is facially overbroad and unconstitutional as applied under the First Amendment; and (3) Section 5104(e)(2)(G) is unconstitutionally vague.[2] The same meritless arguments recently were rejected by Judges John D. Bates and Dabney L. Friedrich when they were raised by other January 6 defendants. *See United States v. Nassif*, No. 21-cr-421 (JDB), 2022 WL 4130841, at *2–*8 (D.D.C. Sept. 12, 2022); *United States v. Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 11-19 (D.D.C. Aug. 18, 2022).

### A.   **Count Nine States an Offense.**

The Court should reject Gray's mistaken claim that Count Nine of the Superseding Indictment fails to state an offense. "The government must prove only that [defendant] paraded, demonstrated, or picketed in a Capitol building, which is exactly what the indictment alleges. The terms are clear and do not require further elaboration." *Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 19.

That is because the main purpose of an indictment is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148–49 (D.C. Cir. 2015). An indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). An indictment is sufficient under the

---

[2] Gray also argues, without explanation or analysis, that "Count 9 [is] merely a redundant statement of Counts 4, 5, and 7." Dkt. No. 56 at 1.  The government assumes this is a reference to Gray's multiplicity argument contained in a separate motion, *compare* Dkt. No. 56 at 3 *with* Dkt. No. 52, and the government's substantive response to that argument is in its opposition to that motion, Dkt. No. 59.

Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).

Count Nine, which alleges that Gray "willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building," Dkt. No. 25 at 5, "clears th[e] low bar," *see United States v. Sargent*, No. 21-cr-258 (TFH), 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022), to sufficiently plead a violation of Section 5104(e)(2)(G). First, Count Nine includes the essential elements of Section 5104(e)(2)(G): it alleges that Gray engaged in the prohibited conduct (parading, demonstrating, and picketing in any Capitol Building), and alleges that he did so with the requisite mental state (willfully and knowingly). Count Nine further alleges that the offense was committed on or about a specific date (January 6, 2021), and that the offense was committed in a specific district (the District of Columbia). "That is adequate to put him on notice of the charge against him." *Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 18.

Although some cases involve a crime "that must be charged with greater specificity," *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007), this is not one of them. The paradigmatic example comes from *Russell v. United States*, 369 U.S. 759 (1962), where the defendant was charged under a statute that makes it a crime for a witness called before a congressional committee to refuse to answer any question "pertinent to the question under inquiry." 2 U.S.C. § 192. The indictment's failure in *Russell* to identify the subject of the congressional hearing rendered it insufficient because "guilt" under that statute "depend[ed] so crucially upon such a specific identification of fact." *Russell*, 369 U.S. at 764. That feature is not

present here because guilt under Section 5104(e)(2)(G)—or under any of the other charges that Gray faces—does not depend on any such "specific identification of fact." *See Resendiz-Ponce*, 549 U.S. at 110 (not applying *Russell* to the illegal re-entry statute at issue in that case because guilt did not turn upon "a specific identification of fact"); *Williamson*, 903 F.3d at 131 (not applying *Russell* to statute criminalizing threats against federal officers); *see also United States v. Apodaca*, 275 F. Supp. 3d 123, 153 n.17, 154–56 (D.D.C. 2017) (not applying *Russell* to statute criminalizing use of firearms in connection with drug trafficking crimes).

Faced with an identical challenge to nearly identical charging language, Judge Bates explained that,

> [A]lthough the information is pithy, it "contains the elements of the offense charged"—that Nassif "paraded, demonstrated, or picketed" within a Capitol building—and "fairly informs" Nassif of the charge against which he must defend—that he violated the statute on January 6, 2021, in the District of Columbia. *Hamling*, 418 U.S. at 117. No more is required, and hence the Court concludes that Count Four of the information states an offense.

*Nassif*, 2022 WL 4130841, at *8. Because the Superseding Indictment here satisfies Rule 7's pleading standard, Gray's argument that the Superseding Indictment is "thread bare," Dkt. No. 56 at 4, rings hollow. Simply put, Count Nine provides a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Nothing else is needed.

**B.      Gray's First Amendment Challenges to Section 5104(e)(2)(G) Fail.**

It appears that Gray is making both a facial and an as-applied challenge to Section 5104(e)(2)(G) under the First Amendment. Both arguments are meritless.

*1.      Section 5104(e)(2)(G) is not unconstitutionally overbroad.*

The statute is not overbroad. *See Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 12–14. In the First Amendment context, as in others, "[f]acial challenges are disfavored." *Washington State Grange*

*v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *id.* at 449 n.6 (internal quotation marks omitted)—are even more exceptional. "'Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment,'" overbreadth is "'strong medicine' to be employed 'only as a last resort.'" *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 769 (1982)); *cf. Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct") (emphasis omitted).

The Supreme Court has therefore "vigorously enforced the requirement that a statute's overbreadth be *substantial* . . . relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801. And laws that are "not specifically addressed to speech" are far less likely to present such a danger. *Hicks*, 539 U.S. at 124; *see id.* (observing that "an overbreadth challenge" to such a law will "[r]arely, if ever, . . . succeed").

Gray's challenge fails that demanding standard. Because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers," the "first step in overbreadth analysis is to construe the challenged statute." *Williams*, 553 U.S. at 293. The prohibition in Section 5104(e)(2)(G) presents "no ambiguity"; it "tells the citizen that it is unlawful

for him" to parade, demonstrate, or picket inside the Capitol Building. *Jeanette Rankin Brigade*, 342 F. Supp. at 583. The operative verbs—parade, demonstrate, and picket—principally target conduct rather than speech, and those verbs are paired with the "willfully and knowingly" scienter requirements, *see Williams*, 553 U.S. at 294 (focusing on scienter requirement in determining that statute was not overbroad). And the subsequent six words, "in any of the Capitol Buildings," makes clear that the statute prohibits conduct within a nonpublic forum, which cabins the overbreadth of which Gray complains. *Nassif*, 2022 WL 4130841, at *4. At the very least, Gray cannot show that Section 5104(e)(2)(G) is "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted).

Gray's own prosecution—which involves physically trespassing into the restricted Capitol—is illustrative of the numerous constitutionally legitimate applications of the statute to conduct and unprotected speech. And far from showing a "realistic danger" of constitutionally problematic applications in other cases, *Taxpayers for Vincent*, 466 U.S. at 801, Gray fails to identify a single actual example of a prosecution based on protected speech. The limitations inherent in the crime of conviction, moreover, render the possibility of any such prosecutions marginal at best, and any such case could be the subject of an as-applied challenge. Nothing at all calls for the "strong medicine," *Los Angeles Police Dep't*, 528 U.S. at 39 (internal quotation marks omitted), of overbreadth invalidation.

Gray's citations to case law show the weaknesses of his overbreadth claim. First, he relies on *Bynum v. U.S. Capitol Police Bd.*, where Judge Friedman ruled that a Capitol Police regulation interpreting Section 5104(e)(2)(G)[3] that defined "demonstration activity" to include "holding vigils" and "sit-ins" swept too broadly because it "invited the Capitol Police to restrict behavior

---

[3] At the time, the provision was Section 193(f)(b)(7).

that is no way disruptive." 93 F. Supp. 2d at 53, 57. As an initial matter, *Bynum*'s invalidation of a Capitol Police regulation—which was applied to an individual who was denied permission to pray inside the Capitol building—does not inform the statutory challenge that Gray presses here. Moreover, Judge Friedman in *Bynum* (and Judge Bates in *Nassif*) concluded that the inside of the Capitol building is a nonpublic forum, where the government may restrict First Amendment activity if "the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'" *Id.* at 56 (citing *Cornelius v. NAACP Legal Defense and Educational Fund*, 473 U.S. 788, 806 (1985)); *see also Nassif*, 2022 WL 4130841, at *4. He reasoned that, although the regulation went too far, Section 5104(e)(2)(G) itself set forth "legitimate purposes," *Bynum*, 93 F. Supp. 2d at 57, that were "aimed at controlling only such conduct that would disrupt the orderly business of Congress—not activities such as quiet praying, accompanied by bowed heads and folded hands," *id.* at 58. In short, Judge Friedman concluded that, unlike the regulation at issue in *Bynum*, the statute itself was not "substantial[ly]" overbroad relative to its "plainly legitimate sweep." *Washington State Grange*, 552 U.S. at 449 n.6 (internal quotation marks omitted); *see also Nassif*, 2022 WL 4130841, at *4.

Gray's reliance on *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), is likewise unavailing. Like *Bynum*, *Lederman* involved a challenge to a Capitol Police regulation, and is of marginal, if any, relevance for that reason. Furthermore, the regulation at issue there limited the areas within the Capitol *Grounds* in which individuals could engage in "demonstration activity," which in *Lederman* involved the distribution of leaflets in support of the arts. *Id.* at 32. Relying in part on *Jeanette Rankin Brigade*, *supra*, Judge Roberts in *Lederman* concluded that the entire Capitol Grounds constitute a traditional public forum, *id.* at 37, and that although the regulation left open alternative channels for expression, its imposition of a total ban burdened more speech

than necessary. *Id.* at 38–39. But Section 5104(e)(2)(G)'s prohibition applies only within the nonpublic forum inside the Capitol buildings, rendering the hypothetical inapt. As Judge Friedrich held, the statute does not cover a substantial amount of protected expressive activity. *Seitz*, 21-cr-279 (DLF), Dkt. No. 51 at 14.

Finally, Gray digresses at various points—where precedent and the language of the statute do not support his argument—to statements during the House debate on the statute. But legislative history "is an uneven tool that cannot be used to contravene plain text." *Bingert*, 2022 WL 1659163, at *11 (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011)); *see also Nassif*, 2022 WL 4130841, at *7 (defendant's "reliance on legislative history is misplaced where the plain text of the statute leaves no need to resort to alternative methods of interpretation"). The floor statements on which Gray relies are "particularly 'unreliable.'" *United States v. Powell*, No. 21-cr-179, Dkt. No. 73, at 6 (D.D.C. July 8, 2022) (citing *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 474 (1921)). For example, in at least one instance, Gray's citation to the legislative history is misleading. He accurately quotes Representative O'Neal's statement that O'Neal is "a little bit disturbed" about the language of the predecessor to Section 5104(e)(2)(G), *see* Dkt. No. 56 at 19, but omits the later discussion in which O'Neal makes clear that the basis for his concern was that the prohibition does not also include the Capitol Grounds. *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. O'Neal) (asking if "anyone would have an objection to adding the word 'grounds' to the new language").[4]

---

[4] Other representatives clarified that the law enacted in 1946 already included a similar prohibition that applied to the Capitol Grounds.  *See* 113 Con. Rec. H29,390 (daily ed. Oct. 19, 1967) (statement of Rep. Colmer) (noting that such an addition "would be surplusage").

2.       *Section 5104(e)(2)(G) is not unconstitutional as applied.*

First, this argument fails because it is undeveloped. Gray asserts an "as-applied" challenge on the first page and in two subsequent headings, Dkt. No. 56 at 1, 11, 14, but never describes the framework for an as-applied challenge. There is no legal analysis to support the meritless "as-applied" claim. The D.C. Circuit has regularly disregarded claims or arguments when a movant fails to adequately develop a claim and when they assert but fail to properly analyze a claim. *See Barot v. Embassy of Zambia*, 773 F. App'x 6, 6 (D.C. Cir. 2019) ("The court declines to consider the other cursory arguments raised by appellant regarding this claim."); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613, (D.C. Cir. 2000) (noting that the court may disregard "asserted but unanalyzed" arguments); *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments." (internal quotation marks and citations omitted)). The same result is warranted here.

Second, the argument fails because it is premature. Gray's claim requires an analysis of his conduct, which is not before the Court at this stage in this case. Gray may raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246–47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010); *see Yakou*, 428 F.2d at 246–47 ("There is no federal criminal procedural mechanism that resembles a motion for summary

judgment in the civil context").[5] No record of the defendant's conduct yet exists in this case, which involves Gray's participation in a siege at the United States Capitol that involved significant violence against police officers and forced lawmakers meeting in a joint Session to evacuate from their respective chambers.

This challenge must wait until after trial. *See United States v. Kokinda*, 497 U.S. 720, 724–25 (1990). In *Kokinda*, two defendants were prosecuted for violating a United States Postal Service regulation that prohibited soliciting contributions outside of a post office. *Id.* at 723. As Gray does here, they advanced a First Amendment claim, namely, that the regulation was an impermissible restriction in a public forum—the sidewalk outside the post office. *Id.* at 724. But they pressed that claim *after trial* in which the presentation of evidence established precisely the defendants' conduct, where it took place, and relevant facts about the sidewalk outside the post office. *Id.* at 724–25. Because, by contrast, Gray's First Amendment challenge is premature, this Court should "go no further." *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985).

## C.    Section 5104(e)(2)(G) is Not Unconstitutionally Vague.

Gray also is incorrect when he asserts that Section 5104(e)(2)(G) is "unconstitutionally vague."[6] Dkt. No. 56 at 17. His flawed argument should be rejected, as it was when raised by other

---

[5] Gray's reliance on First Amendment challenges in civil cases is accordingly flawed. The cross-motions for summary judgment at issue in *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), identified "undisputed," *id.* at 30, facts showing that the plaintiff sought to distribute leaflets, *id.* at 31, a practice long recognized as falling within the ambit of the First Amendment. *See Grace*, 461 U.S. at 176.

[6] As a general matter, one making such a facial vagueness challenge must demonstrate that the law is "impermissibly vague in all its applications"; one whose conduct is "clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests.*, 455 U.S. 489, 494–95 (1982).  Gray cannot surmount that demanding standard.  Where the facial challenge relies on a First Amendment theory, a facial challenge may be available where the challenger shows that the law in question "reaches a substantial amount of constitutionally

January 6 rioters in *Nassif*, 2022 WL 4130841, at *7, and *Seitz*, No. 21-cr-279 (DLF), Dkt. No. 51 at 7–8.

The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amends. V, XIV. An outgrowth of the Due Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "'[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.'" *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982)). To avoid arbitrary enforcement, the law must not "vest[] virtually complete discretion" in the government "to determine whether the suspect has [violated] the statute." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *Williams*, 553 U.S. at 306, or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). "'Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'" *Bronstein*, 849 F.3d at 1107 (quoting *Rose v. Locke*, 423 U.S. 48,

---

protected conduct." *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997) (citing *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)). Even assuming that is viable theory under governing law, *see Quigley v. Giblin*, 569 F.3d 449, 457–58 (D.C. Cir. 2009) (questioning the breadth of "First Amendment vagueness doctrine"), Gray's facial vagueness claim fails for the same reasons that his overbreadth challenge falls short.

50 (1975) (per curiam)). Rather, a provision is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A statutory provision is therefore "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). "As a general matter," however, a law is not constitutionally vague where it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

Gray fails to overcome the strong presumption that Section 5104(e)(2)(G) passes constitutional muster. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Section 5104(e)(2)(G) does not tie criminal culpability to "wholly subjective" terms such as "annoying" or "indecent" that are bereft of "narrowing context" or "settled legal meanings," *Williams*, 553 U.S. at 306, nor does it require application of a legal standard to an "idealized ordinary case of the crime," *Johnson*, 576 U.S. at 604. That the statute makes it unlawful to

"willfully and knowingly … parade, demonstrate, or picket in any of the Capitol Buildings," gives rise to "no such indeterminacy." *Williams*, 553 U.S. at 306; *see also Nassif*, 2022 WL 4130841, at *7. That is, the plain language prohibits an individual from engaging in disruptive conduct inside the Capitol building. *See Bynum*, 93 F. Supp. 2d at 57–58 (explaining that Capitol Police regulation at issue in that case was unnecessary because Congress had provided "more than sufficient guidance" in Section 5104(e)(2)(G)'s statutory text). While "it may be difficult in some cases to determine whether these clear requirements have been met," "'courts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.'" *Id.* (quoting *American Communications Ass'n, CIO v. Douds*, 339 U.S. 382, 411 (1950)).[7]

As Judge Bates explained as he rejected an identical argument that Section 5104(e)(2)(G) "does not define the offense so as to put ordinary people on notice of what is prohibited," *Nassif*, 2022 WL 4130841, at *6,

> The definition of demonstrate—"to make a public demonstration; esp. to protest against or agitate for something," Oxford English Dictionary (3d ed. 2005), or "to make a public display of sentiment for or against a person or cause," as by "students demonstrating for the ouster of the dictator," Webster's New International Dictionary (3d ed. 1993)—is not so vague as [defendant] contends. When read "in light of its neighbors," *McHugh I*, 2022 WL 296304, at *12, "parade" and "picket," it is clear that § 5104(e)(2)(G) prohibits taking part in an organized demonstration or parade that advocates a particular viewpoint—such as, for example, the view that the 2020 U.S. Presidential Election was in some way flawed.

Accordingly, Judge Bates held, as this Court should, that "§ 5104(e)(2)(G) is not unconstitutionally vague on its face." *Id.* at *7.

---

[7] For the reasons given above, Gray's reliance on scattered comments during the floor debate in the House does not require a different outcome.

## V.  <u>CONCLUSION</u>

The Government respectfully requests the Court deny Defendant Gray's motion to dismiss

Count Nine.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:        <u>/s/ JACQUELINE SCHESNOL</u>
JACQUELINE SCHESNOL
Assistant United States Attorney
Arizona Bar No. 016742
United States Attorney's Office, Detailee
601 D Street, N.W.
Washington, DC 20530
Phone: (602) 514-7500
E-mail: jacqueline.schesnol@usdoj.gov

<u>/s/ MICHAEL L. JONES</u>
MICHAEL L. JONES
Trial Attorney, U.S. Department of Justice
Southern Criminal Enforcement Section
D.C. Bar No. 1047027
United States Attorney's Office, Detailee
601 D Street, N.W.
Washington, DC 20530
Email: michael.jones@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

On this 3rd day of November 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ Jacqueline Schesnol*
JACQUELINE SCHESNOL
Assistant United States Attorney
